29 C.C.P.A.(Patents)

## WINCHESTER REPEATING ARMS CO. v. WINCHARGER CORPORATION.

### Patent Appeal No. 4528.

Court of Customs and Patent Appeals.

Dec. 29, 1941.

Rehearing Denied Feb. 20, 1942.

Hervey, Barber & McKee, of New York City (Morrison T. Hankins, of New York City, and Charles R. Allen, of Washington, D. C., of counsel), for appellant.

Irving Herriott, of Chicago, Ill., and Charles M. Thomas, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This controversy involves the petition of the Winchester Repeating Arms Company (Western Cartridge Company, assignee, substituted), hereinafter called the appellant, to cancel, under section 13 of the Trade-Mark Act of February 20, 1905, as amended, 15 U.S.C.A. § 93, two trade-mark registrations granted to the Wincharger Corporation, hereinafter called the appellee.

The involved trade-mark registrations are No. 346,716, of June 8, 1937, for the mark "Wincharger" for "Prime-Mover-Driven Electric Generator Combinations Including Wind-Driven and Engine-Driven Electric Generator Combinations" and No. 347,896 of July 13, 1937, for the mark "Hi-Way Wincharger" for identical goods.

In the petition of appellant to cancel the involved marks, a number of registrations are listed, but the one primarily relied upon is No. 151,645, of February 7, 1922, for the mark "Winchester" for "flash lights and electric batteries."

The Examiner of Interferences denied the petition for cancellation, holding that the goods of the respective parties did not possess the same descriptive properties within the meaning of the aforesaid trade-mark act. The examiner further stated:

"It also seems to the examiner that there are material differences in the marks 'Hi-Way Wincharger' and 'Wincharger' used by the respondent, and the notation 'Winchester' here relied upon by the petitioner. Even if the goods to which these marks are respectively affixed could be regarded as possessing the same descriptive properties it is believed that the differences in the specific characteristics of such goods .and the differences contained in the marks when considered together are sufficient to obviate any reasonable likelihood of confusion in trade. * * *"

Upon appeal, the Commissioner of Patents affirmed the decision of the Examiner of Interferences denying the petition for cancellation. The commissioner stated that the ruling of the Examiner of Interferences that the goods of the respective parties were of different descriptive properties was the only question that needed to be determined and held, as did the examiner, that "the goods of the parties with which their trade-marks are respectively used are not merchandise of the same descriptive properties within the meaning of the statute * * *." Having so held, the commissioner stated that the question of the similarity of the marks became immaterial.

It appears from the record that the appellant, which since the year 1865 has manufactured and sold firearms and ammunition under its "Winchester" trade-mark, expanded its business after the first World War to the point where it now sells, under said mark, some 5,000 different items. About 1920 it began to use its said mark on flashlights and flashlight batteries, and in 1923 extended the use of its mark to include batteries specifically designed for radio use. All batteries on which appellant's said mark "Winchester" is used are of the dry-cell type, that is, incapable of being recharged when their electrical charge has been depleted.

The record further shows that the appellee and its predecessor, since 1927, have been engaged in the business of constructing and selling wind-driven electric generating equipment; that in April 1936 appellee began applying its said trade-mark on batteries which it sold; that the batteries sold by appellee are of the wet-cell rechargeable type; and that in 1935 appellee became a wholly-owned subsidiary of the Zenith Radio Corporation.

It should be noted that there is no issue here as to the cancellation of appellee's trade-mark as applied to a battery, per se. In a companion case, the instant appellant opposed the registration of appellee's "Wincharger" mark as applied to wet-cell storage batteries. See Wincharger Corporation v. Winchester Repeating Arms Co. (Western Cartridge Co., assignee, substituted), 124 F.2d 191, 29 C.C.P.A., Patents ——.

The record shows that the wind-driven electric generating equipment manufactured and sold by appellee is primarily used in rural communities where there is no commercial current; that while the unit may be used without a battery, for instance in counter electrolysis on oil lines, it is usual to employ a battery as an adjunct to the unit. For example, the equipment is used to charge a battery which in turn is used in connection with radio, household lighting, the operation of the usual household electrical appliances, and the like.

The dispute between the parties would seem to be reduced to the following: Are dry-cell batteries, incapable of being recharged, used in radio receivers, of the same descriptive properties as wind-driven electric generating equipment, used principally to charge storage batteries, the use of which is, in part, in connection with radio receivers?

The appellant earnestly argues, in effect, that a storage battery must be considered as an integral part of the wind-driven electric generating equipment, and that, when so considered, it is of the same descriptive properties as its dry-cell battery, principally for the reason that both are used in connection with radio. It also contends that since one of the items in appellee's combination is an electric generator, and that since it and the dry-cell batteries of appellant are " * * * closely associated in the public mind; are offered and sold to the same type of consumers through the same channels of trade * * *" therefore the goods of the parties are of the same descriptive properties.

It is our view that the electric generating combinations upon which the involved marks sought to be cancelled are used do not include a battery. Certainly there is nothing in the record to indicate that they do, and the generator combinations themselves, as shown by the exhibits of record, do not suggest that the combination includes a battery.

The merchandise which appellee sells, which is of importance here, is a generator combination which generates electricity to be stored in a battery, and we cannot hold that the sale by appellee of charging apparatus consisting of propeller, generator, tower, etc., under the trade-mark "Wincharger" or "Hi-Way Wincharger" would be likely to confuse the purchasing public as to its origin or the origin of the dry-cell batteries sold by appellant under the trade-mark "Winchester." The mere fact that the dry-cell batteries are used with radios and that appellee's goods are used to charge wet-cell batteries which, in turn, are used, in part, in connection with radios, does not in our mind suggest that a purchaser of either of the products of the contending parties here would be confused.

Here, it is not a question of conjoint use where the goods of one party are used on or in connection with the goods of the other such as was the case in Cluett, Peabody & Co., Inc., v. Samuel Hartogensis, 41 F.2d 94, 17 C.C.P.A., Patents, 1166, and a number of other cases, nor does the instant record show a related use of the goods of the respective parties comparable to that in Kotex Co. v. McArthur, 45 F.2d 256, 18 C.C.P.A., Patents, 787. It seems to

us that the goods of the respective parties here are more comparable to those involved in the case of Meredith Publishing Co. v. O. M. Scott & Sons Co., 88 F.2d 324, 24 C.C.P.A., Patents 956, where we held that the mark "Better Homes" for use on lawn grass seed, was registrable over the opposition of the owner of the mark "Better Homes and Gardens" for a magazine, although subscribers to the magazine may have bought the grass seed. See, also, Mohawk Milk Products Co., Inc., v. General Distilleries Corp., 95 F.2d 334, 25 C.C.P.A., Patents, 990, wherein we held gin and canned milk not to be goods of the same descriptive properties.

There is little, if any, similarity in the appearance or composition of the goods. On the one hand is an expensive and somewhat complicated machine and on the other is a relatively inexpensive dry-cell battery. Moreover, purchasers of wind-driven charging equipment would fall into the class of what has been referred to as discriminating purchasers.

We think that the Commissioner of Patents arrived at the right conclusion in refusing to cancel the aforesaid trade-mark registrations of appellee, and his decision is affirmed.

Affirmed.